IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

        Plaintiff,

      v.                                  Civil No. 18-1147

JONATHAN DAVID AGUAYO, PERLA
AGUAYO, a/k/a PERLA VASQUEZ, CITY OF
LIBERAL, KANSAS, AND SEWARD COUNTY,
KANSAS,

        Defendants.

## **COMPLAINT**

COMES NOW the United States of America, by Stephen R. McAllister, United States Attorney for the District of Kansas, and Michelle A. Jacobs, Assistant United States Attorney, and for its cause of action alleges:

1.     This is a civil action for foreclosure of a Mortgage brought by the United States of America under the provisions of 28 U.S.C. § 1345.

2.     Service may be made upon the Defendants in the following manner:

     a.     Defendant Jonathan David Aguayo may be served by delivering a copy of the Summons and Complaint to him at 624 N. Prospect Avenue, Liberal, Kansas 67901, within the jurisdiction of this Court.

     b.     Defendant Perla Aguayo, a/k/a Perla Vasquez, may be served by delivering a copy of the Summons and Complaint to her at 624 N. Prospect Avenue, Liberal, Kansas 67901, within the jurisdiction of this Court.

     c.     Defendant City of Liberal, Kansas may be served by delivering a copy of the Summons and Complaint to it c/o City Clerk, 324 N. Kansas Avenue, Liberal, Kansas 67901, within the jurisdiction of this court.

     d.     Defendant Seward County, Kansas may be served by delivering a copy of the Summons and Complaint to it c/o County Clerk, Seward County Courthouse, 515 North Washington, Liberal, Kansas 67901, within the jurisdiction of this court.

3.     Defendant Jonathan David Aguayo executed and delivered to Plaintiff, acting through the Rural Housing Service, United States Department of Agriculture, a promissory note on August 8, 2014, in which he promised to pay Plaintiff the principal amount of $145,400.00, together with interest thereon at the rate of 3.6250 percent (3.6250%) per annum on the unpaid balance.  As consideration for this note, Plaintiff made a Rural Housing loan to Defendant Jonathan David Aguayo, pursuant to the provisions of Title V of the Housing Act of 1949 (42 U.S.C. § 1471, et seq.).  A true and correct copy of the Promissory Note is attached as Exhibit A.

4.     To secure the payment of the indebtedness, Defendants Jonathan David Aguayo and Perla Aguayo, a/k/a Perla Vasquez, did, on August 8, 2014, execute and deliver a purchase-money security interest in the form of a real estate mortgage upon certain real estate located in Seward County, Kansas, within the jurisdiction of this Court, described as follows:

> SURFACE AND SURFACE RIGHTS ONLY, in and to: Lot Four (4), Block Thirteen (13), in the REPLAT of All of Blocks 12, 13, 14 & 15, McCRAY SECOND ADDITION to the City of Liberal, Seward County, Kansas, according to the recorded Plat thereof.

This real estate mortgage was filed for record on August 13, 2014, in the office of the Register of Deeds of Seward County, Kansas, in Vol. 668 at Page 800.  A true and correct copy of the Mortgage is attached as Exhibit B.

5.      Pursuant to the Housing Act of 1949, as amended, 42 U.S.C. § 1490a, and the implementing regulations, 7 C.F.R. 3550.162, the Real Estate Mortgage also secures the recapture of interest credit or subsidy granted to Defendant Jonathan David Aguayo.  The total amount of interest credit or subsidy subject to recapture is $1,380.12, such amount to be recovered *in rem* only, and only after recovery of the principal (including advances and other recoverable costs) and accrued interest through the date of any judgment.   The Interest Credit Subsidy Repayment Agreement is set forth as follows:

| DATE EXECUTED | AMOUNT | EXHIBIT NO. |
|---|---|---|
| August 8, 2014 | $1,380.12 | C |

A copy of the Subsidy Repayment Agreement is attached as Exhibit C.

6.      Plaintiff is the owner and holder of the liability and security documents as set out above, attached as Exhibits A, B.

7.      Defendant Jonathan David Aguayo failed to pay Plaintiff installments of principal and interest when due in violation of the provisions of the liability and security documents set out above.  Plaintiff has elected to exercise its option to declare the entire unpaid principal balance plus interest to be immediately due and payable and has made demand for these amounts.  No payment has been received.

8.      The amount due on the promissory note and mortgage is principal in the amount of $144,746.26 (including unpaid principal of $130,151.67, escrow replenish of $10,876.53, agency title report fees of $300.00, escrow fees of $1,224.20, and late fees of $103.86) as of April 24, 2018; plus interest in the amount of $15,502.54 (including interest on principal of $14,774.51 and interest on advances of $728.03) accrued to April 24, 2018; plus interest accruing thereafter at the daily rate of $14.2336 (including daily interest on principal of $12.9260 and daily interest on

advances of $1.3076) to the date of judgment; plus administrative costs of $5.00 (including lis pendens filing fee of $5.00) pursuant to the promissory note and mortgage; plus filing fees in the amount of $400.00 allowed pursuant to 28 U.S.C. § 2412(a)(2); plus interest thereafter at the rate set forth in 28 U.S.C. § 1961; plus court costs and the costs of this action presently and in the future incurred.

9.      Plaintiff also demands *in rem* judgment in the amount of $1,380.12 for interest credit or subsidy subject to recapture; plus interest after the date of judgment at the rate set forth in 28 U.S.C. § 1961; and foreclosure of all Defendants' interests in the subject real estate.

10.     No other action has been brought for recovery of these sums and no payment has been received.

11.     The Plaintiff has completed all loan servicing requirements of Title V of the Housing Act of 1949, 42 U.S.C. § 1471, et seq.

12.     The following Defendants may claim an interest in the real estate that is the subject of this action:

        a.      Defendant Perla Aguayo, a/k/a Perla Vasquez, may claim an interest as a signatory to the mortgage referenced above and pursuant to a marital interest in the property.

        b.      Defendant City of Liberal, Kansas may claim an interest as a lien creditor pursuant to a promissory note and mortgage.

        c.      Seward County, Kansas may claim an interest in the subject real estate pursuant to 2014 Tax Warrant #12 dated March 25, 2015.

13.     The indebtedness due Plaintiff by Defendant Jonathan David Aguayo is a first and prior lien on the property described above.

4

14.     The interests of Defendants are junior and inferior to the interests of Plaintiff United States of America.

15.     Less than one-third (1/3) of the original indebtedness secured by the mortgage was paid prior to default.

Plaintiff demands *in personam* judgment against Defendant Jonathan David Aguayo in the sum of principal in the amount of $144,746.26 (including unpaid principal of $130,151.67, escrow replenish of $10,876.53, agency title report fees of $300.00, escrow fees of $1,224.20, and late fees of $103.86) as of April 24, 2018; plus interest in the amount of $15,502.54 (including interest on principal of $14,774.51 and interest on advances of $728.03) accrued to April 24, 2018; plus interest accruing thereafter at the daily rate of $14.2336 (including daily interest on principal of $12.9260 and daily interest on advances of $1.3076) to the date of judgment; plus administrative costs of $5.00 (including lis pendens filing fee of $5.00) pursuant to the promissory note and mortgage; plus filing fees in the amount of $400.00 allowed pursuant to 28 U.S.C. § 2412(a)(2); plus interest thereafter at the rate set forth in 28 U.S.C. § 1961; plus court costs and the costs of this action presently and in the future incurred.

Plaintiff also demands foreclosure of all Defendants' interests in the subject real estate.

Plaintiff further demands *in rem* judgment in the amount of $1,380.12 for interest credit or subsidy subject to recapture; plus interest after the date of judgment at the rate set forth in 28 U.S.C. § 1961.

Plaintiff further demands that its Mortgage be declared a first and prior lien on the real estate described herein and that such advances as the Plaintiff may be authorized and required to pay for insurance premiums, real estate taxes, title fees, or other costs necessary to protect the security during the pendency of this proceeding be allowed as a first and prior lien on the security.

Plaintiff further demands that the United States of America be granted judgment foreclosing its mortgage on the subject real property and the interests of all Defendants.

Plaintiff further demands that the judgment granted the United States of America in the Order and Judgment is the final judgment of this Court.

Plaintiff further demands that all legal right, title and interest which the Defendants have in the real estate be foreclosed, and the real estate be sold at public sale, in accordance with 28 U.S.C. §§ 2001-2003, inclusive, subject to a redemption period not to exceed three (3) months, pursuant to the provisions of K.S.A. § 60-2414(m), and that the sale be subject to any unpaid real estate taxes, special assessments and easements of record.

Plaintiff further demands that it may bid up to the full amount due it at the time of the sale without paying funds into the Court, which bid shall satisfy the requirement for a cash sale, and that the sale proceeds be applied in the following order:

(1)   Filing fees in the amount of $400.00 allowed pursuant to 28 U.S.C. § 2412(a)(2);

(2)   The costs of this action and the foreclosure sale;

(3)   The interest accruing on Plaintiff's *in personam* judgment against Defendant Jonathan David Aguayo;

(4)   Plaintiff's *in personam* judgment against Defendant Jonathan David Aguayo;

(5)   The interest accruing on Plaintiff's *in rem* judgment for interest credit or subsidy subject to recapture;

(6)   Plaintiff's *in rem* judgment for interest credit or subsidy subject to recapture; and,

(7)   Any remaining balance should be held by the Clerk of the District Court to await the Court's further order.

Further, Plaintiff prays that, in the event the judgment is not wholly satisfied out of the proceeds of the sale, Plaintiff shall have judgment against Defendant Jonathan David Aguayo for any deficiency that exists after crediting the proceeds together with interest at the legal judgment rate. Plaintiff further demands that all right, title, and interest in and to the real estate of the Defendants, and of all persons claiming by, through or under them be decreed to be junior and inferior to the Plaintiff's Mortgage and be absolutely barred and foreclosed.

Plaintiff further prays that, if the grantee named in the United States Marshal's Deed, or the grantee's assigns, are denied possession of the real property, a Writ of Assistance issue out of this Court to the United States Marshal for the District of Kansas, upon application of the grantee or assigns, ordering and directing the United States Marshal to place the grantee or assign, in full, complete, and peaceful possession of the real property.

Respectfully submitted,

STEPHEN R. MCALLISTER
United States Attorney
District of Kansas


s/ Michelle A. Jacobs
MICHELLE A. JACOBS
Assistant United States Attorney
Ks. S.Ct. No. 21261
1200 Epic Center
301 N. Main
Wichita, Kansas 67202
PH: (316) 269-6481
FX: (316) 269-6484
Email: michelle.jacobs@usdoj.gov
Attorneys for the Plaintiff

<u>REQUEST FOR PLACE OF TRIAL</u>

The United States of America hereby requests that trial of the above-entitled matter be held in the City of Wichita, Kansas.

s/ Michelle A. Jacobs
MICHELLE A. JACOBS
Assistant United States Attorney

*Aguayo, Jonathan D.*

Form RD 1940-16
(Rev. 7-05)

Form Approved
OMB No. 0575-0172

### UNITED STATES DEPARTMENT OF AGRICULTURE
### RURAL HOUSING SERVICE

### PROMISSORY NOTE

Type of Loan  SECTION 502

**SATISFIED**

Loan No.  42021295

This _____ day of _____,20 _____
United States of America
By: _____

Date: 08/08  20 14

Title: _____
USDA, Rural Housing Services

341 Harold Blvd
_____
(Property Address)

Liberal _____, Seward _____, KS _____
(City or Town)                          (County)              (State)

BORROWER'S PROMISE TO PAY. In return for a loan that I have received, I promise to pay to the order of the United States of America, acting through the Rural Housing Service (and its successors) ("Government") $ 145,400.00 (this amount is called "principal"), plus interest.

INTEREST. Interest will be charged on the unpaid principal until the full amount of the principal has been paid. I will pay interest at a yearly rate of 3.6250 %. The interest rate required by this section is the rate I will pay both before and after any default described below.

PAYMENTS. I agree to pay principal and interest using one of two alternatives indicated below:

I. Principal and interest payments shall be temporarily deferred. The interest accrued to _____, _____ shall be added to the principal. The new principal and later accrued interest shall be payable in 396 regular amortized installments on the date indicated in the box below. I authorize the Government to enter the amount of such new principal here: $_____, and the amount of such regular installments in the box below when such amounts have been determined. I agree to pay principal and interest in installments as indicated in the box below.

II. Payments shall not be deferred. I agree to pay principal and interest in 396 installments as indicated in the box below.

I will pay principal and interest by making a payment every month.
I will make my monthly payment on the 8th day of each month beginning on September 8, 2014 and continuing for 395 months. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this note. My monthly payments will be applied to interest before principal. If on August 8, 2047, I still owe amounts under this note, I will pay those amounts in full on that date, which is called the "maturity date."
My monthly payment will be $ 630.06. I will make my monthly payment at the post office address noted on my billing statement or a different place if required by the Government.

PRINCIPAL ADVANCES. If the entire principal amount of the loan is not advanced at the time of loan closing, the unadvanced balance of the loan will be advanced at my request provided the Government agrees to the advance. The Government must make the advance provided the advance is requested for an authorized purpose. Interest shall accrue on the amount of each advance beginning on the date of the advance as shown in the Record of Advances below. I authorize the Government to enter the amount and date of the advance as shown in the Record of Advances below. I authorize the Government to enter the amount and date of such advance on the Record of Advances.

HOUSING ACT OF 1949. This promissory note is made pursuant to title V of the Housing Act of 1949. It is for the type of loan indicated in the "Type of Loan" block at the top of this note. This note shall be subject to the present regulations of the Government and to its future regulations not inconsistent with the express provisions of this note.

According to the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number. The valid OMB control number for this information collection is 0575-0172. The time required to complete this information collection is estimated to average 15 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information.

**EXHIBIT A**

LATE CHARGES. If the Government has not received the full amount of any monthly payment by the end of __15__ days after the date it is due, I will pay a late charge. The amount of the charge will be _____4_____ percent of my overdue payment of principal and interest. I will pay this charge promptly, but only once for each late payment.

BORROWER'S RIGHT TO PREPAY. I have the right to make payments of principal at any time before they are due. A payment of principal only is known as a "prepayment." When I make a prepayment, I will tell the Government in writing that I am making a prepayment.

I may make a full prepayment or partial prepayment without paying any prepayment charge. The Government will use all of my prepayments to reduce the amount of principal that I owe under this Note. If I make a partial prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Government agrees in writing to those changes. Prepayments will be applied to my loan in accordance with the Government's regulations and accounting procedures in effect on the date of receipt of the payment.

ASSIGNMENT OF NOTE. I understand and agree that the Government may at any time assign this note without my consent. If the Government assigns the note I will make my payments to the assignee of the note and in such case the term "Government" will mean the assignee.

CREDIT ELSEWHERE CERTIFICATION. I certify to the Government that I am unable to obtain sufficient credit from other sources at reasonable rates and terms for the purposes for which the Government is giving me this loan.

USE CERTIFICATION. I certify to the Government that the funds I am borrowing from the Government will only be used for purposes authorized by the Government.

LEASE OR SALE OF PROPERTY. If the property constructed, improved, purchased, or refinanced with this loan is (1) leased or rented with an option to purchase, (2) leased or rented without option to purchase for 3 years or longer, or (3) is sold or title is otherwise conveyed, voluntarily or involuntarily, the Government may at its option declare the entire remaining unpaid balance of the loan immediately due and payable. If this happens, I will have to immediately pay off the entire loan.

REQUIREMENT TO REFINANCE WITH PRIVATE CREDIT. I agree to periodically provide the Government with information the Government requests about my financial situation. If the Government determines that I can get a loan from a responsible cooperative or private credit source, such as a bank or a credit union, at reasonable rates and terms for similar purposes as this loan, at the Government's request, I will apply for and accept a loan in a sufficient amount to pay this note in full. This requirement does not apply to any cosigner who signed this note pursuant to section 502 of the Housing Act of 1949 to compensate for my lack of repayment ability.

SUBSIDY REPAYMENT AGREEMENT. I agree to the repayment (recapture) of subsidy granted in the form of payment assistance under the Government's regulations.

CREDIT SALE TO NONPROGRAM BORROWER. The provisions of the paragraphs entitled "Credit Elsewhere Certification" and "Requirement to Refinance with Private Credit" do not apply if this loan is classified as a nonprogram loan pursuant to section 502 of the Housing Act of 1949.

DEFAULT. If I do not pay the full amount of each monthly payment on the date it is due, I will be in default. If I am in default the Government may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Government may require me to immediately pay the full amount of the unpaid principal, all the interest that I owe, and any late charges. Interest will continue to accrue on past due principal and interest. Even if, at a time when I am in default, the Government does not require me to pay immediately as described in the preceding sentence, the Government will still have the right to do so if I am in default at a later date. If the Government has required me to immediately pay in full as described above, the Government will have the right to be paid back by me for all of its costs and expenses in enforcing this promissory note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorney's fees.

Account # 42021295

NOTICES. Unless applicable law requires a different method, any notice that must be given to me under this note will be given by delivering it or by mailing it by first class mail to me at the property address listed above or at a different address if I give the Government a notice of my different address. Any notice that must be given to the Government will be given by mailing it by first class mail to the Government at USDA Rural Housing Service, c/o Customer Service Branch Post Office Box 66889, St. Louis, MO 63166 , or at a different address if I am given a notice of that different address.

OBLIGATIONS OF PERSONS UNDER THIS NOTE. If more than one person signs this note, each person is fully and personally obligated to keep all of the promises made in this note, including the promise to pay the full amount owed. Any person who is a guarantor, surety, or endorser of this note is also obligated to do these things. The Government may enforce its rights under this note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this note. The term "Borrower" shall refer to each person signing this note.

WAIVERS. I and any other person who has obligations under this note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Government to demand payment of amounts due. "Notice of dishonor" means the right to require the Government to give notice to other persons that amounts due have not been paid.

**WARNING: Failure to fully disclose accurate and truthful financial information in connection with my loan application may result in the termination of program assistance currently being received, and the denial of future federal assistance under the Department of Agriculture's Debarment regulations, 7 C.F.R. part 3017.**

_____ Seal
Borrower Jonathan D Aguayo

_____ Seal
Borrower

_____ Seal
Borrower

_____ Seal
Borrower

| RECORD OF ADVANCES | | | | | |
|---|---|---|---|---|---|
| AMOUNT | DATE | AMOUNT | DATE | AMOUNT | DATE |
| (1) $ | | (8) $ | | (15) $ | |
| (2) $ | | (9) $ | | (16) $ | |
| (3) $ | | (10) $ | | (17) $ | |
| (4) $ | | (11) $ | | (18) $ | |
| (5) $ | | (12) $ | | (19) $ | |
| (6) $ | | (13) $ | | (20) $ | |
| (7) $ | | (14) $ | | (21) $ | |
| TOTAL    $ | | | | | |

3

1873

**STATE OF KANSAS** } **REGISTRATION FEE**
SEWARD COUNTY
Indebtedness Amt. $ *145,400* <u>Fees, $ *exempt*</u>
Paid this *13th* day of *Aug.* 20 *14* No. *444*
*Karen Q. Warden*
KAREN J. WARDEN, Register of Deeds

STATE OF KANSAS } FEE $ *16*/*12.* <sup>00</sup>
SEWARD COUNTY
This instrument was filed for record
*August 13* 20 *14*
at *10:35* o'clock *A.* M. and recorded
in Vol. *668* at page *800*
KAREN J. WARDEN, Register of Deeds
*Karen J. Warden*

Form RD 3550-14 KS
(9-00)

[Space Above This Line For Recording Data]

Form Approved
OMB No. 0575-0172

United States Department of Agriculture
Rural Housing Service

# MORTGAGE FOR KANSAS

THIS  MORTGAGE ("Security Instrument") is made on                                August 8 , 2014        . [Date]
The mortgagor is        Jonathan D Aguayo & Perla Aguayo, husband & wife
                                                                                                                                    ("Borrower").
This Security Instrument is given to the United States of America acting through the Rural Housing Service or successor agency,
United States Department of Agriculture ("Lender"), whose address is Rural Housing Service, c/o Centralized Servicing Center,
United States Department of Agriculture, P.O. Box 66889, St. Louis, Missouri  63166.

Borrower is indebted to Lender under the following promissory notes and/or assumption agreements (herein collectively called
"Note") which have been executed or assumed by Borrower and which provide for monthly payments, with the full debt, if not
paid earlier, due and payable on the maturity date:

| Date of Instrument | Principal Amount | Maturity Date |
|---|---|---|
| August 8, 2014 | $145,400.00 | August 8, 2047 |

This Security Instrument secures to Lender:  (a) the repayment of the debt evidenced by the Note, with interest, and all renewals,
extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced under paragraph 7 to protect
the property covered by this Security Instrument; (c) the performance of Borrower's covenants and agreements under this
Security Instrument and the Note, and (d) the recapture of any payment assistance and subsidy which may be granted to the
Borrower by the Lender pursuant to 42 U.S.C. §§ 1472(g) or 1490a.  For this purpose, Borrower does hereby mortgage,  grant,
and convey to Lender the following described property located in the County of
                                        Seward                            , State of Kansas

        SURFACE AND SURFACE RIGHTS ONLY, in and to:
        Lot Four (4), Block Thirteen (13), in the REPLAT of All of Blocks 12, 13, 14 & 15, McCRAY
        SECOND ADDITION to the City of Liberal, Seward County, Kansas, according to the recorded Plat
        thereof.

ATTRS
10 8?
16/12

*According to the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.
The valid OMB control number for this information collection is 0575-0172.    The time required to complete this information collection is estimated to average 15
minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and
reviewing the collection of information.*

which has the address of          341 Harold Blvd                 Liberal
                                  [Street]                          [City]
              67901-5031
Kansas             [ZIP]              ("Property Address");

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures which now or hereafter are a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal and Interest; Prepayment and Late Charges.** Borrower shall promptly pay when due the principal of and interest on the debt evidenced by the Note and any prepayment and late charges due under the Note.

2. **Funds for Taxes and Insurance.** Subject to applicable law or to a written waiver by Lender, Borrower shall pay to Lender on the day monthly payments are due under the Note, until the Note is paid in full, a sum ("Funds") for: (a) yearly taxes and assessments which may attain priority over this Security Instrument as a lien on the Property; (b) yearly leasehold payments or ground rents on the Property, if any; (c) yearly hazard or property insurance premiums; and (d) yearly flood insurance premiums, if any. These items are called "Escrow Items." Lender may, at any time, collect and hold Funds in an amount not to exceed the maximum amount a lender for a federally related mortgage loan may require for Borrower's escrow account under the federal Real Estate Settlement Procedures Act of 1974 as amended from time to time, 12 U.S.C. § 2601 *et seq.* ("RESPA"), unless another law or federal regulation that applies to the Funds sets a lesser amount. If so, Lender may, at any time, collect and hold Funds in an amount not to exceed the lesser amount. Lender may estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held by a federal agency (including Lender) or in an institution whose deposits are insured by a federal agency, instrumentality, or entity. Lender shall apply the Funds to pay the Escrow Items. Lender may not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. However, Lender may require Borrower to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with this loan, unless applicable law provides otherwise. Unless an agreement is made or applicable law requires interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender may agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds, showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for all sums secured by this Security Instrument.

If the Funds held by Lender exceed the amounts permitted to be held by applicable law, Lender shall account to Borrower for the excess funds in accordance with the requirements of applicable law. If the amount of the Funds held by Lender at any time is not sufficient to pay the Escrow Items when due, Lender may so notify Borrower in writing, and, in such case Borrower shall pay to Lender the amount necessary to make up the deficiency. Borrower shall make up the deficiency in no more than twelve monthly payments, at Lender's sole discretion.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender. If Lender shall acquire or sell the Property after acceleration under paragraph 22, Lender, prior to the acquisition or sale of the Property, shall apply any Funds held by Lender at the time of acquisition or sale as a credit against the sums secured by this Security Instrument.

3. **Application of Payments.** Unless applicable law or Lender's regulations provide otherwise, all payments received by Lender under paragraphs 1 and 2 shall be applied in the following order of priority: (1) to advances for the preservation or protection of the Property or enforcement of this lien; (2) to accrued interest due under the Note;

Page 2 of 6

(3) to principal due under the Note; (4) to amounts required for the escrow items under paragraph 2; (5) to late charges and other fees and charges.

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines and impositions attributable to the Property which may attain priority over this Security Instrument, and leasehold payments or ground rents, if any. Borrower shall pay these obligations in the manner provided in paragraph 2, or if not paid in that manner, Borrower shall pay them on time directly to the person owed payment. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. If Borrower makes these payments directly, Borrower shall promptly furnish to Lender receipts evidencing the payments.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Lender has agreed in writing to such lien or Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within ten (10) days of the giving of notice.

Borrower shall pay to Lender such fees and other charges as may now or hereafter be required by regulations of Lender, and pay or reimburse Lender for all of Lender's fees, costs, and expenses in connection with any full or partial release or subordination of this instrument or any other transaction affecting the property.

5. **Hazard or Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage" and any other hazards, including floods or flooding, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. The insurer providing the insurance shall be chosen by Borrower subject to Lender's approval which shall not be unreasonably withheld. If Borrower fails to maintain coverage described above, at Lender's option Lender may obtain coverage to protect Lender's rights in the Property pursuant to paragraph 7.

All insurance policies and renewals shall be in a form acceptable to Lender and shall include a standard mortgagee clause. Lender shall have the right to hold the policies and renewals. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

Unless Lender and Borrower otherwise agree in writing, insurance proceeds shall be applied to restoration or repair of the Property damaged, if the restoration or repair is economically feasible and Lender's security is not lessened. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. If Borrower abandons the Property, or does not answer within thirty (30) days a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may collect the insurance proceeds. Lender may use the proceeds to repair or restore the Property or to pay sums secured by this Security Instrument, whether or not then due. The thirty (30) day period will begin when the notice is given.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of the payments. If after acceleration the Property is acquired by Lender, Borrower's right to any insurance policies and proceeds resulting from damage to the Property prior to the acquisition shall pass to Lender to the extent of the sums secured by this Security Instrument immediately prior to the acquisition.

6. **Preservation, Maintenance, and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate, or commit waste on the Property. Borrower shall maintain the improvements in good repair and make repairs required by Lender. Borrower shall comply with all laws, ordinances, and regulations affecting the Property. Borrower shall be in default if any forfeiture action or proceeding, whether civil or criminal, is begun that in Lender's good faith judgment could result in forfeiture of the Property or otherwise materially impair the lien created by this Security Instrument or Lender's security interest. Borrower may cure such a default by causing the action or proceeding to be dismissed with a ruling that, in Lender's good faith determination, precludes forfeiture of the Borrower's interest in the Property or other material impairment of the lien created by this Security Instrument or Lender's security interest. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note. If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

7. **Protection of Lender's Rights in the Property.** If Borrower fails to perform the covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture or to enforce laws or regulations), then Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property. Lender's actions may include paying any sums secured by a lien which has priority over this Security Instrument, appearing in court, paying reasonable attorneys' fees and entering on the Property to make

repairs. Although Lender may take action under this paragraph 7, Lender is not required to do so.

Any amounts disbursed by Lender under this paragraph 7 shall become additional debt of Borrower secured by this Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

8.  **Refinancing.** If at any time it shall appear to Lender that Borrower may be able to obtain a loan from a responsible cooperative or private credit source, at reasonable rates and terms for loans for similar purposes, Borrower will, upon the Lender's request, apply for and accept such loan in sufficient amount to pay the note and any indebtedness secured hereby in full.

9.  **Inspection.** Lender or its agent may make reasonable entries upon and inspections of the Property. Lender shall give Borrower notice at the time of or prior to an inspection specifying reasonable cause for the inspection.

10.  **Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. In the event of a total taking of the Property, the proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the taking, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the taking, divided by (b) the fair market value of the Property immediately before the taking. Any balance shall be paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is less than the amount of the sums secured hereby immediately before the taking, unless Borrower and Lender otherwise agree in writing or unless applicable law otherwise provides, the proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the condemnor offers to make an award or settle a claim for damages, Borrower fails to respond to Lender within thirty (30) days after the date the notice is given, Lender is authorized to collect and apply the proceeds, at its option, either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of such payments.

11.  **Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower and any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successors in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

12.  **Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 16. Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

13.  **Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any other address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

14.  **Governing Law; Severability.** This Security Instrument shall be governed by federal law. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable. This instrument shall be subject to the present regulations of Lender, and to its future regulations not inconsistent with the express provisions hereof. All powers and agencies granted in this instrument are coupled with an interest and are irrevocable by death or otherwise; and the rights and remedies provided in this instrument are cumulative to remedies provided by law.

15.  **Borrower's Copy.** Borrower acknowledges receipt of one conformed copy of the Note and of this Security Instrument.

16.  **Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is leased for a term greater than three (3) years, leased with an option to purchase, sold, or transferred

Page 4 of 6

(                                 (

(or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument.

17. **Nondiscrimination.** If Borrower intends to sell or rent the Property or any part of it and has obtained Lender's consent to do so (a) neither Borrower nor anyone authorized to act for Borrower, will refuse to negotiate for the sale or rental of the Property or will otherwise make unavailable or deny the Property to anyone because of race, color, religion, sex, national origin, disability, age, or familial status, and (b) Borrower recognizes as illegal and hereby disclaims and will not comply with or attempt to enforce any restrictive covenants on dwelling relating to race, color, religion, sex, national origin, disability, age or familial status.

18. **Sale of Note; Change of Loan Servicer.** The Note or a partial interest in the Note (together with this Security Instrument) may be sold one or more times without prior notice to Borrower. A sale may result in a change in the entity (known as the "Loan Servicer") that collects monthly payments due under the Note and this Security Instrument. There also may be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change in accordance with paragraph 13 above and applicable law. The notice will state the name and address of the new Loan Servicer and the address to which payments should be made.

19. **Uniform Federal Non-Judicial Foreclosure.** If a uniform federal non-judicial foreclosure law applicable to foreclosure of this security instrument is enacted, Lender shall have the option to foreclose this instrument in accordance with such federal procedure.

20. **Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any hazardous substances on or in the Property. The preceding sentence shall not apply to the presence, use, or storage on the Property of small quantities of hazardous substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any federal, state, or local environmental law or regulation.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any hazardous substance or environmental law or regulation of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any hazardous substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with applicable environmental law and regulations.

As used in this paragraph "hazardous substances" are those substances defined as toxic or hazardous substances by environmental law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph, "environmental law" means federal laws and regulations and laws and regulations of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

21. **Cross Collateralization.** Default hereunder shall constitute default under any other real estate security instrument held by Lender and executed or assumed by Borrower, and default under any other such security instrument shall constitute default hereunder.

**NON-UNIFORM COVENANTS.** Borrower and Lender further covenant and agree as follows:

22. **SHOULD DEFAULT** occur in the performance or discharge of any obligation in this instrument or secured by this instrument, or should the parties named as Borrower die or be declared incompetent, or should any one of the parties named as Borrower be discharged in bankruptcy or declared an insolvent, or make an assignment for the benefit of creditors, Lender, at its option, with or without notice may: (a) declare the entire amount unpaid under the note and any indebtedness to Lender hereby secured immediately due and payable, (b) for the account of Borrower incur and pay reasonable expenses for repair or maintenance of and take possession of, operate or rent the property, (c) upon application by it and production of this instrument, without other evidence and without notice of hearing of said application, have a receiver appointed for the property, with the usual powers of receivers in like cases, (d) foreclose this instrument as provided herein or by law, and (e) enforce any and all other rights and remedies provided herein or by present or future laws.

23. The proceeds of foreclosure sale shall be applied in the following order to the payment of: (a) costs and expenses incident to enforcing or complying with the provisions hereof, (b) any prior liens required by law or a competent court to be so paid, (c) the debt evidenced by the note and all indebtedness to Lender secured hereby, (d) inferior liens of record required by law or a competent court to be so paid, (e) at Lender's option, any other indebtedness of Borrower owing to Lender, and (f) any balance to Borrower. At foreclosure or other sale of all or any part of the property, Lender and its agents may bid and purchase as a stranger and may pay Lender's share of the purchase price by crediting such amount on any debts of Borrower owing to Lender, in the order prescribed above.

24. Borrower agrees that Lender will not be bound by any present or future State laws, (a) providing for valuation, appraisal, homestead or exemption of the property, (b) prohibiting maintenance of an action for a deficiency judgment or limiting the amount thereof or the time within which such action must be brought, (c) prescribing any other limitations, or (d) limiting the conditions which Lender may by regulation impose, including the interest rate it may charge, as a condition of approving a transfer of the property to a new Borrower. Borrower

Page 5 of 6

BOOK **668** PAGE **804**

Return recorded Note to:
City of Liberal
P.O. Box 2199
Liberal, KS 67905-2199

*Note*

Date Aug. 8 , 2014

Property Address (hereinafter called the Property):
Lot Four (4), Block Thirteen (13), Replat of all Blocks Twelve (12), Thirteen (13), Fourteen (14), and Fifteen (15), McCray Second Addition to the City of Liberal, Seward County, Kansas. Also known as: 341 Harold Blvd. Liberal, Kansas.

1. **BORROWER'S PROMISE TO PAY.** In return for a loan that I have received (Loan), I promise to pay U.S. 2,500.00 (this amount is called principal) to the order of Lender. Lender is the City of Liberal, government agency organized and existing under the laws of the United States of America. Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called Note Holder. The Loan evidenced by this Note is being made pursuant to the City of Liberal First-Time Homebuyer Down Payment Assistance Program as approved by the Liberal City Commission on December 13, 2013.

2. **INTEREST.** There will be no interest charged on the Loan.

3. **Payments.** The principal amount of this Note shall be due and payable upon Note Holder's designation of a default under this Note. It is default under this Note if: (a) I (or at least one of us if more than one borrower) do not continue to occupy the Property as my principal residence; or (b) I transfer the Property to another (other than the Senior Lender) without prior notice to Lender. The indebtedness evidenced by this Note, and any other financial obligation which may hereafter be imposed on me by Lender, is subordinate to the indebtedness evidenced by a Note payable to Senior Lender, which note is secured by a first mortgage or deed of trust on the Property (First Mortgage). Provided that Note Holder does not designate a default under this Note, the amounts due and payable under this Note shall not become due and payable, but shall be forgiven as follows: The principal amount of the Loan shall be reduced over the first three (3) years by 1/36th of the original principal balance of the Loan for each month the Loan is outstanding. Such monthly reductions shall take effect in arrears on the same day of the month the Loan was originally made. The amount of the Loan due and payable at any time shall be determined after deducting the principal amount of the Loan with has been forgiven by Note Holder.

4. **GIVING OF NOTICES.** Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it via first class mail to me at the Property Address above or at a different address if I give Note Holder a notice of my different address.

5. **OBLIGATIONS OF PERSONS UNDER THIS NOTE.** If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

6. **WAIVERS.** I and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. Presentment means the right to require Note Holder to demand payment of amounts due. Notice of dishonor means the right to require Note Holder to give notice to other persons that amounts due have not been paid.

7. **SUBORDINATE MORTGAGE.** In addition to the protections given to Note Holder under this Note, a Subordinate Mortgage, dated the same date as this Note protects Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. The Subordinate Mortgage is and shall be subject and subordinate in all respects to the liens, terms, covenants and conditions of the First Mortgage.

WITNESS THE SIGNATURES OF THE UNDERSIGNED

Borrower: _____
Jonathan D. Aguayo

Borrower: _____
Perla Aguayo

Form RD 3550-12
(Rev. 05-12)

**United States Department of Agriculture**
**Rural Housing Service**

Form Approved
OMB No. 0575-0172

Account # 42021295

### SUBSIDY REPAYMENT AGREEMENT

Only one agreement should be executed by the subject borrower for the subject property.  The agreement is completed at the closing of the first Agency loan to the borrower regardless of whether or not they qualify for payment assistance at that time.

1. As required under section 521 of the Housing Act of 1949 (42 U.S.C. 1490a), subsidy received in accordance with a loan under section 502 of the Housing Act of 1949 is repayable to the Government upon the disposition or nonoccupancy of the security property. Deferred mortgage payments are included as subsidy under this agreement.

2. When the borrower transfers title or fails to occupy the home, recapture is due. This includes, but is not limited to, events of foreclosure and deeds in lieu of foreclosure.  It the borrower refinances or otherwise pays in full without transfer of title and continues to occupy the property, the amount of recapture will be calculated, but payment of recapture can be deferred, interest free, until the property is subsequently sold or vacated. If deferred, the Government mortgage can be subordinated but will not be released nor the promissory note satisfied until Government is paid in full.  In situations where deferral of recapture is an option, recapture will be discounted 25% if paid in full at time of settlement or in a timely manner after Agency notification to the borrower that recapture is due.

3.  Amount of  Recapture Due

a.  Except as provided in paragraph 4, the amount of recapture due is the LESSER of either the amount of subsidy received, or the Portion of Value Appreciation subject to recapture as calculated under this paragraph.

b.  The Portion of Value Appreciation subject to recapture is calculated as follows:

      Current market value (see paragraph 3(c))

      LESS

      Original amount of prior liens and subordinate affordable housing products (see paragraph 3(d)),

      Balance to be paid off on RHS loans (see paragraph 3(e)),

      Reasonable settlement costs (see paragraph 3(f)),

## EXHIBIT C

*According to the Paperwork Reduction Act of 1995, no person are required to respond to a collection of information unless it display a valid OMB control number.  The valid OMB control number for this information collection is 0575-0172. The time required to complete this information collection is estimated to average 5 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information.*

Principal reduction at note rate (see paragraph 3 (g)),

Original equity (see paragraph 3 (h)), and

Capital improvements (see paragraph 3(i)).

EQUALS

Value appreciation (If this is a positive value, continue. If this is a negative value or "$0", there is no recapture due.)

TIMES

Percentage of outstanding balance of open loans, if applicable (see paragraph 3(j)),

Recapture percentage (see paragraph 3(k)), and

Return on borrower's original equity (see paragraph 3(1)).

EQUALS

Portion of value Appreciation subject to recapture.

c.    Current market value is the market value of the property at the time of the loan pay off; and is determined by an appraisal meeting Agency standards or an arm's length sales contract provided by the borrower upon Agency request.

d.    The original amount of prior liens and subordinate affordable housing products is the total of all liens against the property at the time the loan is approved.

e.    The balance to be paid off on RHS loans is the unpaid balance at the time of loan payoff, including principal, interest, fees, negative escrow, and protective advances.

f.    Reasonable settlement cost are those which are currently reasonable and customary in the area, and documented by a good faith estimate by the lender or an estimate provided by the closing agent.

g.    Principal reduction at note rate is the amount of RHS loan principal paid by the borrower to date. This does not include principal payments that are attributed to the payment assistance subsidy.

h.    Original equity is the market value of the property LESS prior liens, subordinate affordable housing products and Rural Housing Single Family Housing loans when the original RHS loan was made. Market value at the time of loan approval generally is the LESSER of the: (1) sales price, construction/rehabilitation cost, or total of these costs, whichever is applicable; OR (2) appraised value at the time of loan approval. For Self-Help loans, the market value is the appraised value as determined at the time of loan approval/obligation, which is subject to completion per plans and specifications. If the house is not ultimately finished under the Self-Help program , an amended agreement using the market value definition in this paragraph must be used. If the applicant owns the building site free and clear, or if an existing non-Agency debt on the site without a dwelling will not be refinanced with Agency funds, the market value at the time of loan approval will be the lower of the appraised value or the construction cost plus the value of the site.

Market value at the time of original loan approval for the property located at:

341 Harold Blvd

Liberal, KS 67901-5301                    $    145,400.00

LESS prior liens                          $ _____ Held by _____

                                          $ _____ Held by _____

LESS subordinate affordable housing products  $    2,500.00 Held by City of Liberal

                                          $ _____ Held by _____

LESS Rural Development Single Family Housing Loans  $    145,400.00

EQUALS original equity (If negative number, use "0")  $        0.00


DIVIDE original equity by market value for
percentage of original equity            _____ 0  %

i.  Capital improvements are additions made to the property after the original RHS loan was made that add
    value above and beyond repairs necessary to maintain the property and keep it in good condition. The
    value of a capital improvement is determined by an appraisal, either obtained by the Agency or provided
    by the borrower upon Agency request, based on the change in the property's value attributable to
    the improvement. The cost of making the improvement will not be considered when making assessment.

j.  Percentage of outstanding balance of open loans applies if all loans are not subject to recapture, or if all
    loans subject to recapture are not being paid in full. To calculate the percentage of outstanding balance of
    open loans subject to recapture, divided the balance of RHS loans subject to recapture that are being paid
    by the balance of all open loans. Multiply the result by 100 to determine the percentage of the outstanding
    balance of open loans being paid.

k.  Recapture percentage is determined by the number of months the oldest loan subject to recapture has
    been outstanding and the average subsidized interest rate paid over the years. For example, in the chart
    below, if the oldest loan subject to recapture has been outstanding for 70 months and the average interest
    rate paid is 2.5%, the recapture percentage is .50.

| months loan outstanding | Average interest rate paid | | | | | | | |
|---|---|---|---|---|---|---|---|---|
|  | 1 % | 1.1 2% | 2.1 3% | 3.1 4% | 4.1 5% | 5.1 6% | 6.1 7% | >7% |
| 0 - 59 | .50 | .50 | .50 | .50 | .44 | .32 | .22 | .11 |
| 60 - 119 | .50 | .50 | .50 | .49 | .42 | .31 | .21 | .11 |
| 120 - 179 | .50 | .50 | .50 | .48 | .40 | .30 | .20 | .10 |
| 180 - 239 | .50 | .50 | .49 | .42 | .36 | .26 | .18 | .09 |
| 240 - 299 | .50 | .50 | .46 | .38 | .33 | .24 | .17 | .09 |
| 300 - 359 | .50 | .45 | .40 | .34 | .29 | .21 | .14 | .09 |
| 360 & up | .47 | .40 | .36 | .31 | .26 | .19 | .13 | .09 |

l. Return on borrower's equity is the difference between 100 percent and the percentage of borrower's original equity.

4.  Foreclosure and Deed in Lieu. In case of foreclosure or deed- in-lieu of foreclosure (voluntary conveyance) to the Government, the amount of recapture due shall equal the total amount of subsidy received. Such amount will be recoverable from the security property only, not as a personal liability of the borrower.

5.  The Direct Single Family Housing Loan Program is administered under regulations at 7 C.F.R. part 3550. This agreement is subject to those regulations as well as any future amendments and successor regulations not inconsistent with this agreement.

Borrower agrees to pay recapture in accordance with this agreement.

| Borrower<br><br>Jonathan D Aguayo | Date  08-08-2014 |
|---|---|
| Borrower | Date |